# IN THE UNITED STATES FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
FEB 0 4 2009
J.T. NOBLIN, CLERK
BY_____ DEPUTY

**THE ESTATE OF JESSIE LEE
WILLIAMS, JR., DECEASED, BY AND
THROUGH HIS NEXT FRIEND AND
LEGAL REPRESENTATIVE, TERRY
WILLIAMS, ADMINISTRATOR
OF THE ESTATE OF JESSIE LEE WILLIAMS, JR.   PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO.: 1:09** CV144160-JMR

**THE CITY OF LONG BEACH, MISSISSIPPI
and
LONG BEACH POLICE OFFICER JASON CASE**               **DEFENDANTS**

# COMPLAINT
## (THE PLAINTIFF DEMANDS A TRIAL BY JURY)

**COMES NOW**, the Plaintiff, the Estate of Jessie Lee Williams, Jr., Deceased, by and

through his next friend and legal representative, Terry Williams, the Administrator of the Estate of

Jessie Lee Williams, Jr., in the above styled and numbered civil action, by and through his counsel

of record, Michael W. Crosby, who files this his Second Amended Complaint against the

aforementioned Defendants. In support of the same, the Plaintiff states, avers and gives notice of

the following:

## PRELIMINARY STATEMENT

1.      This is a Federal Civil Rights action brought as a result of a blatant violation of, *inter*

*alia,* the federal civil, constitutional and human rights of the Deceased, Jessie Lee Williams, Jr.,

who while in the custody of the Harrison County Sheriff Department, a facility inspected and

accredited by the, The American Correctional Association (hereinafter referenced to as the

ACA), on February 4, 2006, was unnecessarily restrained and so severely beaten that he was later rushed to the emergency room at the Memorial Hospital at Gulfport. As a direct and proximate consequence of the injuries the Deceased received at the hands of certain law enforcement officers, one of whom has now been convicted on federal criminal charges related thereto, he later died on February 6, 2006. It is alleged that the Deceased's rights under certain federal statutes, to include 42 U.S.C. Sections 1983, 1985, and 1986, together with certain rights under the Constitutions of the United States of America and the State of Mississippi were violated. Jessie Lee Williams, Jr., is survived by seven children. It is on behalf of these, the Deceased's minor children, that the Administrator of the Estate, Mr. Terry Williams, files this action and prays for the relief set forth in the following paragraphs.

## STATEMENT OF THE FACTS

2.      For years prior to February 4, 2006, individuals arrested and/or detained in the booking room of the Harrison County Adult Detention Center (Harrison County Jail) were   subjected to unnecessary and unreasonable violence at the hands of various deputies and law enforcement/police officers, some associated with the Harrison County Sheriff's department and other members of local municipal police departments. The abuse, for the most part, was directed at and exploded upon those detainees who failed to obey the instructions given to them by law enforcement personnel in the exact  manner that the booking officers  thought that they should act. The abuse began to intensify as the fatal day for Jessie Lee Williams, Jr. approached.  For instance, on August 25, 2005, a Caucasian   man arrested for Public Drunk  was taken into the shower room by an African-American  male booking officer, and  when the arrestee did not comply  as fast  as the officer thought he should, the officer, with his black leather gloves punched the arrestee  in the face, and broke his jaw on both sides.   A written complaint was file, but no disciplinary  action  was taken. This  was part and parcel of a plan to intimidate and to instill extreme fear in those persons

in the booking area who would witness such acts. This policy, procedure, edict, act or custom  was

allowed, condoned and tolerated by law enforcement personnel because it served to send a signal to

detainees/arrestees that if they did not behave while in incarcerated and housed in the cell blocks,

the same thing  would happen to them.  For an under-staffed and over-worked jail workforce, this

was a "vital part" of there daily routine.

3.      Further, on October 3, 2005, when an Hispanic man had difficulty understanding a

command to put his shoes on the counter, his inability to understand English was simply assumed

to  be a failure to comply - resulting in a severe beating involving punching, kicking, and other

blows to the head, face and body of this young man until an outside officer arriving with another

arrestee yelled, "Hey, did it ever occur to you that he might not be able to speak English." The

abusing officer then stopped the beating, and with one hand, picked the Hispanic male up by the

back of the collar, walked over to a holding cell and literally threw him inside. Because of the

intervention of this outside police officer, the beating of this individual was not as severe as it

could have been. However, when police officers, those sworn to uphold the law and to protect the

public, stand idly by and simply complete their paperwork, watch as a spectator or do absolutely

nothing to intervene while human beings are being brutally beaten, they are as much a part of the

problem as the person actually engaging in the beatings.  Regardless, the violence at the Harrison

County Jail, an ACA accredited facility, continued and ultimately culminated with the beating of

Jessie Lee Williams, Jr., on February 4, 2006, and his subsequent death on February 6, 2006.

4.      On this same October 3, 2005 day, one of the two men already in the cell at the Harrison

County Jail made the mistake of saying, "I wish you would try to do that to me," at which time the

large guard held one finger up and said, "I'll be right back." The booking deputy walked over to the

location they kept their black leather gloves, put them on, and with the aid of another police officer,

went back to the cell and retrieved the man who "smarted off" to him and proceeded to beat him to

the ground, while kicking him in the head, upper chest, neck and face. To add insult to injury, this police officer, while he continued kicking and beating this young man, constantly yelled at him, "quit resisting." All at the same time, the young man begged him to stop and stated "I'm not resisting."

5.      Other unnecessary abuses involved police officers ordering arrestees or persons being detained into the shower/dressing room which had no cameras, then the booking officers would began striking the arrestees in an attempt to incite them to fight them back. At such time, the police officers would then step out into the view of the camera where the booking officers would use the typically much smaller arrestees defending themselves which the booking officers would use as their justification to beat them unmercifully.

6.      Such action took place against all races and both genders. Injuries included many black eyes, broken bones, injured muscles, concussions, cuts, lacerations, abrasions, and psychological trauma beyond description or imagination. The worse case of documented abuse known by this attorney, which is believed to have been committed by the Ryan Teel less than 30 days prior to the homicide of Jessie Williams, Jr., took place on January 7, 2006, when an intoxicated African American male made the tragic mistake of looking into the female holding cell, which brought upon him the sadistic wrath of the booking officers who beat, and kicked him unmercifully.

7.      This man was put into the restraining chair, a/k/a the devil's chair, and Ryan Teel requested a spit sack. Instead of a spit sack, a sheet was given to Teel who tightly wrapped the sheet around the man's head so tight that one could easily see his facial features. Ryan Teel then obtained water which he began to pour onto the sheet - causing much pain and terror in the restrained man. A complaint was filed in due course, and the administration was specifically warned if someone did not do something about these beatings and Deputy Teel, someone was going to die soon. They were right!

**8.**     On February 4, 2006, Jessie Lee Williams, Jr., was arrested by the Gulfport Police Department and charged with misdemeanors. He was speaking loudly and protesting his innocence. Prior to his arrival at the Harrison County Adult Detention Facility, the officer transporting Mr. Williams to the Harrison County Jail called in and informed the booking officers that we have a "live one" coming in. Ryan Teel stated, "it's about time we got some action around here," and he and Regina Rhodes began to prepare for Jessie's arrival by donning their black leather gloves.

**9.**     They met Jessie Lee Williams, Jr., at the door, but Jessie was behaving properly, and not in a manner expected by the booking officers. He was told to stand up against the wall next to a man he was brought in with and next to two Hispanic males. Jessie stepped away from the wall and Teel marched over to him and slammed Jessie into the wall. Jessie protested, and eventually stepped about a foot away from the wall again, at which time, Regina Rhodes, stomped over to him and slammed him into the wall again. Jessie proclaimed, that they were wrong for doing that, that you shouldn't hit a man in hand cuffs, and if they wanted to fight, they should take the handcuffs off and fight fair - one on one. Ryan Teel said I'll give you that opportunity in a few minutes when I finish my paperwork.

**10.**     Teel did finish his paperwork, and then he called Jessie to the counter. Teel took off the cuffs and told him to put his hands on the counter. He did. Teel then asked, "so what is this about you wanting some one on one?" Jessie said something which the witnesses could not understand, but it appeared that he was backing down to Teel. Teel then said, put your shoes on the counter. Jessie bent down to get his shoes and Teel kicked him in the chest. Jessie went flying back , but never raised up. Teel again ordered, "put your shoes on the counter." Jessie reached for his shoes when Teel slapped him so hard in the head and face that the witness said you could see spit come out of his mouth. Jessie, having had enough and while trying to defend himself, charged Teel and

to Teel's surprise, shock and embarrassment, he took Teel down to the ground.

11.     Numerous officers grabbed Jessie, to include but not limited to Long Beach Police Officer Jason Case, and they pulled him off of Teel and began to restrain Jessie. Shortly thereafter, Teel took out his taser and shot Jessie in the back. Jessie went to the ground. Teel put the taser to Jessie's back and back side burning holes in his flesh numerous times. Many of the police officers, guards and deputies started kicking and hitting Jessie. Jessie was screaming,"alright, I give!" Teel dropped on Jessie's neck and head with his knees, raised up and then dropped on his head again - repeatedly. Regina Rhodes got on his legs and continued to punch and beat Jessie. Teel started to punch and hammer slammed Jessie in the head repeatedly with his fists. They hog-tied Jessie, hands to feet. Blood was pouring from Jessie's mouth and Regina Rhodes stated,"that is crack-head spit" so Teel put a sack on Jessie's head. Kelly Knight then handed Teel a can of pepper spray. Teel sprayed the entire can into the sack. Jessie began thrashing and screaming, "I give up! I give up!" He cried aloud. Rhodes and Teel continued kicking Jessie more yelling at him to "quit resisting."

12.     Then, with one hand, Teel picked Jessie up, carried him like a suitcase, and dropped him to the floor, face first. He then picked him up again, and dropped him face first to the concrete floor again. The booking guards and others, one of whom is believed to be Officer Jason Case, a member of the Long Beach Police Department, then rolled Jessie up into an elastic fabric (something like a straight jacket) and put him into the restraining chair. While in the chair, Teel choked and beat Jessie over a period of time. Eventually, when Jessie was unable to raise his head, he poured water on his face and said, "oops, don't drown."

13.     On the evening of February 4, 2006, there were several other unknown persons present in the booking room. There may have been other unknown officers or persons who was present and who had a duty to intervene and to stop the beating. They definitely had a duty to report the abuse. However, they did not. In fact many of those officers and other persons present during the beating

of Jessie Lee Williams, Jr., prepared and submitted incomplete, inaccurate, false and misleading official incident reports in an effort to cover up this horrific attack this helpless man.

## PARTIES

14.    The Plaintiff is the Estate of Jessie Lee Williams, Jr., Deceased. The suit is brought by its duly appointed Administrator, Terry Williams, the brother of the Deceased. At the time of his death, the Deceased, Jessie Lee Williams, Jr., was a citizen of the United States of America and the State of Mississippi wherein he resided in Harrison County, First Judicial District. The injuries inflicted upon the Deceased were done while he was being held on a misdemeanor charge in the Harrison County Adult Detention Center in Gulfport, Mississippi, while the Center was under the supervision and control of Harrison County, Mississippi and Sheriff George Payne.

15.    The American Correctional Association(ACA) is a national association that is incorporated in the State of Delaware. The ACA's goal is, in exchange for a fee, to assess a correctional facility's training, standards, policies and procedures and to provide acceptable policies, standards, training and procedures in an effort to make a "'good faith' effort to improve conditions of confinement" of persons detained in one of their accredited facilities such as the Harrison County Adult Detention Center.   The Defendant, The City of Long Beach, Mississippi, is a municipality duly incorporated under the laws of the State of Mississippi. Pursuant to Miss. Code Ann. Section 13-3-47 (1972), service of process may be had on the City of Long Beach, Mississippi, by effecting the same upon its Mayor or the Municipal Clerk for the City of Long Beach, Mississippi at its principal place of business or at 645 Klondyke Road, Long Beach, Mississippi. At all times material hereto, the City of Long Beach, Mississippi, was vicariously liable for the acts of omission or commission of the Defendant, Long Beach Police Officer Jason Case, as the same relates to the death of Jesse Lee Williams, Jr.

16.    The Defendant, Long Beach Police Officer Jason Case, was at all times material hereto a

police officer employed by the City of Long Beach, Mississippi. It is believed that this Defendant actively participated in the abuses inflicted upon the Deceased, Jesse Lee Williams, Jr., while at the Harrison County Adult Detention Center on February 4, 2006, and that he was present during the time Jesse Lee Williams, Jr., was beaten and that he either assisted other Defendants or unknown persons with the beating and/or he failed to intervene, report and/or stop the beating while observing the same taking place in his presence when he had an affirmative duty to intervene, stop or immediately report the illegal conduct of others, known or unknown and for preparing a false, misleading, incomplete and inaccurate official incident report . His acts of omission or commission are vicariously attributed to the Defendant, the City of Long Beach, Mississippi. He maybe served with lawful process at his home or at his place of employment the Long Beach Police Department.

**18.**      The Defendants', Unknown John and Jane Does, identities are not known to the Plaintiff at this time. As an example only and not exclusively limited to the same, witnesses have stated that there were police officers from other jurisdictions and departments present and in some instances witnesses stated that these officers actually assisted in holding or restraining Jesse Lee Williams, Jr., while others abused him. However, their true identities are unknown at this time and it is believed that they are adult resident citizens of Harrison County Mississippi and through the discovery process it is further believed that the true and accurate identities will become known and at that time the Plaintiff will seek leave of this Honorable Court to amend his Complaint and to specifically name the unknown persons as Defendants to this action and serve them with process for wrongs committed and violations against the rights, privileges and immunities of the Deceased, Jessie Lee Williams, Jr., all of which it is alleged were committed in their official and individual capacities, as employees of the City of Long Beach, Mississippi, other State or Municipal entities and/or other individuals acting in concert with such person, persons or state entities named as Defendants herein or who may be discovered to have acted in a manner detrimental to the rights,

privileges and immunities of the Deceased, Jessie Lee Williams, Jr.

## JURISDICTION

19.     The Plaintiff herein invokes the federal question jurisdiction of this Honorable Court

pursuant to 28 U.S.C. Sections 1331 & 1343 to obtain a judgment for the costs of suit, including

reasonable attorneys' fees, and damages suffered and sustained by the Deceased, Jessie Lee

Williams, Jr., and caused by the Defendants' blatant violation of the rights, privileges and

immunities of the Deceased, Jessie Lee Williams, Jr., as guaranteed by the Fifth, Eighth and

Fourteenth Amendments to the Constitution of the United States of America and by the

applicable Federal statutes, more particularly, 42 U.S.C. Sections 1983, 1985(3), 1986 & 1988.

Additionally, this Honorable Court has jurisdiction to adjudicate the pendent or supplemental

state claims that arose out of the same course of conduct giving rise to the principal claims of the

Plaintiff as herein stated.

## VENUE

20.     Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. Section 1391(b)

because a substantial part of the real and immediate harm sustained by the Plaintiff occurred in

this judicial district and division.

## COUNT I
## ACTION FOR DEPRIVATION OF CIVIL RIGHTS
### (42 U.S.C. SECTION 1983)

21.     The Plaintiff hereby incorporates by reference and re-alleges the information set forth in

the forgoing paragraphs.

22.     At all times material hereto, the present and former Defendants were vested with the state

authority and the non-delegable responsibility and duty of adhering to, complying with and

enforcing the laws of the United States of America and the State of Mississippi.  Consequently,

while acting under color of state law, the present and former Defendants commenced to engage

in a course of conduct, individually and in concert with one another, and to implement a policy,

custom, usage, plan or practice wherein the rights, privileges or immunities of the Deceased,

Jessie Lee Williams, Jr., and others similarly situated, would be and were actually violated.

Specifically, the Defendants, jointly and severally, engaged in a course of conduct that resulted in

the violation of the Deceased's, Jessie Lee Williams, Jr., right to the equal protection of the laws

of the United States of America pursuant to the Fourteenth Amendment to the Constitution of the

United States of America and the corresponding provisions of the Constitution of the State of

Mississippi, the right to procedural and substantive due process of the law pursuant to the Fifth

and Fourteenth Amendments to the Constitution of the United States of America, and the right

against cruel and unusual punishment as set forth in the Eighth Amendment to the Constitution

of the United States of America.  The violations complained of in this Complaint include, but are

not limited to, the use of excessive force, torture, deprivation of identifiable civil rights, i.e., life,

liberty and/or property, the unnecessary and wanton infliction of pain and inhumane torture and

treatment in light of the circumstances confronted by the Defendants resulting in a deprivation

that was sufficiently serious wherein the Defendants acted, maliciously and sadistically by using

force and physical violence designed and intended to cause Jessie Lee Williams, Jr., physical,

mental and emotional harm, pain, humiliation and/or injury, and thereafter, evidence a deliberate

indifference to the immediate, grave and serious medical needs of Deceased, Jessie Lee

Williams, Jr., all of which caused or contributed to his death on February 6, 2006.

23.     As a direct and proximate consequence of the Defendants' actions, the Deceased, Jessie Lee

Williams, Jr., was deprived of certain rights, privileges and immunities secured by the Constitution

of the United States of America, the laws of this Nation and the State of Mississippi.  Specifically,

the Deceased's, Jessie Lee Williams, Jr., Fifth and Fourteenth Amendment rights to procedural and

substantive due process and to the equal protection of the laws were violated by the Defendants and

possibly other unknown Defendants, together with his Eighth Amendment right proscribing cruel and unusual punishment.

24.     At all times material hereto, members of local law enforcement to include the Long Beach Police Department and their agents, representatives, and employees acted pursuant to the policies, regulations, and decisions officially adopted or promulgated by those persons whose acts, decisions and edicts may fairly be said to represent official policy of or were pursuant to a governmental custom, usage or practice of the Harrison County Sheriff Department and the policies, procedures, customs and approved practices, usages and protocols, some of which were developed, promulgated and caused to be implemented by the ACA, the company that the Harrison County Sheriff's Department and Harrison County, Mississippi, hired to provide certain services including the development and promulgation of new standards and the revision of existing standards, as well as technical assistance in developing good, safe, proper and lawful corrections policies and procedures and corrections training.

25.     It is further averred that the former Defendants Sheriff George Payne, Major Dianne Gaston-Riley and Captain Rick Gaston, were the governmental officials whose decisions, encouragement and edicts or acts may fairly be said to represent official policy, practices, customs or regulations of the Harrison County, Mississippi, and the Harrison County Sheriff Department. The aforementioned individuals, collectively and individually, developed, planned (or allowed to develop *de facto)* and implemented the policy, custom and/or usage that resulted in and cause the death of the Deceased, Jessie Lee Williams, Jr.  The ACA likewise, as a third party professional contractor hired, employed, retained or paid by Harrison County, Mississippi and the Harrison County Sheriff's Department to oversee the development of safe policies, customs and procedures and to supervise and advise regarding the implementation of the same, knew or reasonably should have known that Harrison County's policies, procedures and customs were lacking substance and needed to be improved upon

and it did nothing to sore commend, change, alter or improve the same, which, if done, would have prevented the tragic loss of the life of Jessie Lee Williams, Jr.

26.     As a direct and proximate consequence of the Defendants' conduct, acts and omissions wherein such Defendants deprived the Deceased, Jessie Lee Williams, Jr., of certain rights guaranteed by the Constitution of the United States of America and the State of Mississippi, the Deceased, Jessie Lee Williams, Jr., suffered immediate and irreparable injury to his person resulting in the deprivation of his constitutional rights, privileges and immunities and ultimately causing his wrongful death.  However, while alive and being beaten, the Deceased, Jessie Lee Williams, Jr., experienced extreme pain, suffering, humiliation, degradation, mental distress, severe emotional anguish and ultimately death.

## COUNT II
## ACTION FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (42 U.S.C. SECTION 1985)

27.     The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the foregoing paragraphs.

28.     Prior to the time that the Deceased, Jessie Lee Williams, Jr., was delivered into the custody of the Harrison County Sheriff Department's booking room Deputies by the Gulfport Police Department Officer Kelly Knight who initially arrested him on a misdemeanor charge, certain known and other unknown (John and Jane Does A-Z) members of the Harrison County Sheriff Department began preparing for the Deceased's arrival. Their plan was simply to teach the Deceased, Jessie Lee Williams, Jr., a lesson and to cause him to suffer and endure great pain and suffering through the infliction of physical abuse and deprivation of his protected constitutional rights. This plan culminated in the completion of the agreement and a deprivation of the Deceased's constitutional rights when the Deceased, Jessie Lee Williams, Jr., was so severely beaten, shackled, hogtied, pepper

sprayed, and tazed that he later died as a direct and proximate consequence of the injuries he sustained while in the custody of the Harrison County Sheriff's Department. The ACA, had it conducted any semblance of a real and tangible audit and made real and sufficient recommendations to Harrison County, Mississippi and it Sheriff's department regarding actual safeguards, Jessie Lee Williams Jr's. death would no have occurred. However, due to the cozy relationship between the ACA and certain officers at the Department, this did not take place. The ACA's accreditation and the subsequent audits were nothing more than a sham.

29.     The ACA was hired, employed, retained and/or otherwise paid by Harrison County, Mississippi, to upgrade or improve the jail environment and to recommend, suggest, implement, supervise, monitor, review and audit policies and procedures that would make the jail environment a safer place for both those who would be detained and those who likewise worked in the jail. The ACA, prior to granting its accreditation and during the followup audits should have requested and received reports on the conditions of the jail, the number of incidents having taken place therein during the period prior to accreditation, and any judgments or consent decrees under which the Jail was to operate prior to re-certification. The ACA failed to offer adequate changes to the dangerous policies, practices, customs and procedures developed, adopted (by express action or implication) through the development of a custom acceptable but dangerous behavior.

30.     At all times material hereto, there existed at the Harrison County Adult Detention Center a belief, practice, usage and/or custom that it was perfectly fine to beat and/or abuse detainees while being processed in booking, among other places in the jail. This process of abusive treatment was used as a means to intimidate others who may have observed the abuses while in the booking area because there was a severe lack of adequate man power which the ACA should have also pointed out would have caused such problems. It was further well understood that utilizing excessive force, beating, abusing and torturing detainees or arrestees that members of

the law enforcement (and others present) were not intervene to stop the beating nor were they to report the same. To the contrary, they were to provide incomplete, inaccurate, false or misleading reports. By knowingly engaging in such conduct by negligently turning a blind eye to such conduct all persons involved, to include the ACA, became co-conspirators, aiders and abetters and/or accomplices in the scheme or action to deprive persons such as the Deceased, Jessie Lee Williams, Jr., of his civil, constitutional and human rights and they are consequently liable for their acts of omission and commission to the Deceased's family and the costs and expenses incurred in the prosecution of this action.

31.     The conspiracy to deprive the Deceased, Jessie Lee Williams, Jr., of certain federally protected rights, privileges and immunities began with a basic agreement among certain officers, that was encouraged by their superiors and sanctioned by the ACA by its failure to properly recommend, suggest, offer, implement, monitor, review and audit adequate policies, procedures, customs and usages that would have prevented same.   It is clear from the facts set forth above that the Defendants, in compliance with the acts of th the officers, did willfully, maliciously and negligently engage in conduct in an agreement to conspire to engage in a course of conduct consistent with the edicts, acts, policies, procedures, official decisions and mandates of Harrison County, Mississippi, Sheriff George Payne, the Harrison County Sheriff Department and the ACA that resulted in a blatant violation the Deceased's, Jessie Lee Williams, Jr., constitutional rights through their acts of omission and commission. As a direct and proximate consequence of the aforementioned actions on the date in question, the Deceased, Jessie Lee Williams, Jr., was killed. Thus the Defendants are jointly and severally liable to the Plaintiff for the injuries, pain, suffering, and resulting wrongful death of the Deceased, Jessie Lee Williams, Jr.

## COUNT III
## ACTION FOR NEGLECT OR FAILURE TO PREVENT CONSPIRACY
## (42 U.S.C. SECTION 1986)

32.    The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the foregoing paragraphs.

33.    These Defendants, along with others both known and unknown persons, knew or reasonable should have known through the exercise of due diligence, prior to the death of the Deceased, Jessie Lee Williams, Jr., and the implementation of and completion of the conspiracy to deprive him of

his federally protected rights that such activity regularly took place in the Harrison County Adult Detention Center, especially in the booking area. There had been previous incidents of abuse and/or allegations of unnecessary use of excessive force reported by the Harrison County Adult Detention Center to the ACA  when it sought accreditation from the ACA, and to the United States Department of Justice as part and parcel of the January 1995 Consent Judgement.

34.    On information and belief during 2005 officials of the Harrison County Adult Detention Center reported that within the preceding 12 months they had received 54 reports of incidents of abuse, 22 of those incidents occurred in the booking department and approximately11 or more are believed to have involved the same two officers. There was one specific  incident of abuse which the former Defendant, Harrison County, Mississippi, was aware and the same information was available to the ACA prior to conducting its most recent audit prior to Jessie Lee Williams Jr's. death.  It occurred and was  reported in the Summer of 2005 as part and parcel of the quarterly reports that are required to be prepared pursuant to the federal consent judgment.  Oddly enough, no one looked into the matter.

35.    However, none of these remaining Defendants, who could have intervened did so.  Their absence and wholly callous attitude appears to have been orchestrated for the purpose of setting up a defense of denial as the ACA and the other local law enforcement agency, officer and/or municipality took no action, made no recommendations, in essence, they did absolutely nothing. Had

any of these persons or entities taken any action whatsoever to expose these abuses and/or to report them to the proper authorities the Deceased, Jessie Lee Williams, Jr., would still be alive today.

36.     The former Defendants, the ACA, the City of Long Beach, Mississippi and its Police Officer, Officer Jason Case, in their individual and official capacities, either intentionally or through their own negligence and gross oversight, did nothing to report, expose, prevent, intervene, stop or otherwise thwart the actions that resulted in the conspiracy to deprive the Deceased, Jessie Lee Williams, Jr., and other persons similarly situated, of the equal protections of the laws of this Nation and State not with standing the fact that they possessed the authority, duty, power, and ability to halt, annul, void, expose, intervene in or stop the violations before they occurred and/or as they were occurring.  Consequently, these Defendants are liable to the Estate of Jessie Lee Williams, Jr., and to his wrongful death beneficiaries for his death and the deprivations that occurred prior thereto.

**COUNT IV**
**PENDENT STATE OR SUPPLEMENTAL CLAIMS**
**A.  BREACH OF THIRD PARTY BENEFICIARY CONTRACT**

37.     The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the foregoing paragraphs.

38.     The Defendant, the American Correctional Association (ACA), entered into a contract with Harrison County, Mississippi, for the purpose of obtaining national accreditation of the Harrison County Adult Detention Center where the Deceased, Jesse Lee Williams, Jr., was beaten on February 4, 2006. In exchange for a fee or monetary consideration that was duly paid by Harrison County, Mississippi, on behalf of its citizenry which included the Deceased, the ACA began an accreditation and evaluation (and subsequent audit) process of the Harrison County Adult

Detention Center in an effort to, in the words of the ACA, **"improve conditions of confinement"**

through the establishment of proper training of jail staff, delivery of adequate medical services,

instruction on proper detention techniques, understanding offender activity levels, implementation

of proper, adequate and legal standards, policies, procedures, evaluation, review and oversight. The

primary goal for obtaining such accreditation was to **"impact the life, safety and health of inmates,**

**as well as staff"** of the Harrison County Adult Detention Center.  The Harrison County Adult

Detention Center was an ACA accredited facility at the time Jesse Lee Williams, Jr., was detained

and killed.  Ironically, the Jail is still, to this very day, listed as being on of the facilities the bear the

accreditation seal of the ACA.

39.      The contractual agreement entered into by the ACA and Harrison County, Mississippi,

was specifically entered into for the purpose of improving the "**conditions of confinement**" of

persons who may be detained at the Harrison County Adult Detention Center and to serve as a

"**defense against lawsuits.**" The Harrison County Board of Supervisors, acting on behalf of

Harrison County, Mississippi, and the citizen of Harrison County, Mississippi, created a third

party beneficiary contractual relationship between the ACA and the citizens of Harrison County,

Mississippi, i.e., those who may find themselves confined in the Harrison County Adult

Detention Center, those persons employed at such facility and those tax paying citizens whose

taxes may be adversely affected by the successful prosecution of lawsuits for acts that violate

local, state, federal and/or constitutional laws.

40.      The ACA breached its contract with Harrison County, Mississippi, and its third party

beneficiaries, the late Jesse Lee Williams, Jr.,and the citizen of Harrison, County, Mississippi,

when it knew or reasonably should have known that the Harrison County Adult Detention Center

was not operating pursuant to its mandated standards, policies and procedures.  As a direct and

proximate consequence of the ACA's breach of this third party beneficiary contract, Jesse Lee

Williams, Jr., was so badly beaten on the date in question that he ultimately died from his

wounds. Thus the Plaintiff, on behalf of the Estate and children of the Deceased, Jessie Lee

Williams, Jr. and his wrongful death beneficiaries, is entitled to a money judgment against this

Defendant whose breach caused or contributed to or otherwise facilitated the deprivation of civil

rights and the ultimate wrongful death of the Deceased, Jesse Lee Williams, Jr., through its acts

of omission or commission and/or deception towards Harrison County, Mississippi and it

citizenry as the same relates to the accreditation of the Harrison County Adult Detention Center

and the creation of a safe environment for jail personnel and those detained within the facility.

## B. BREACH OF CONTRACT

**41.**     The Plaintiff hereby incorporates by reference and re-alleges the information set forth in

the foregoing paragraphs.

**42.**     Harrison County, Mississippi, entered into a contract for certain services and for the

accreditation of the Harrison County Adult Detention Facility by the Defendant, the ACA.  In so

doing, the parties entered into the contract that is attached hereto and incorporated herein by

reference as Exhibit "A".  Pursuant to the agreement with Harrison County, Mississippi, and the

ACA, the ACA agreed to obligate itself to the performance of certain duties, audits, reviews and

to provide certain oversight of training and supervision and the recommendation of certain

policies and procedures.   These are set forth in the enclosure but also include the representations

tendered to Harrison, Mississippi, which are set forth in paragraphs 38 and 39 above, to name but

a few.

**43.**     Harrison County, Mississippi, alleges that the ACA has breached its obligations by failing

to do the things it represented and promised it would do when it entered into the contract wit

Harrison County, Mississippi and the Harrison County Sheriff and the department he over saw. Consequently, Harrison County, Mississippi, would argue that as a result of the breach and failure to perform in general, its failures to create an safe environment for persons detained in the Jail and those who worked there, to improve the conditions of confinement and to implement a program that would provide a defense for lawsuits, in specific, on the part of the ACA, the County has been damaged and suffered not only economic losses relating to the death of Jessie Lee Williams, Jr., but the public has lost a great deal of confidence in the management of the Harrison County Jail. The County's otherwise good image has been tarnished by this breach. But for the representations made by the ACA and its representatives, agents, employees, etc., neither Harrison County, Mississippi nor the Sheriff of Harrison County, Mississippi would have entered into the attached contract with the ACA.

43.     Harrison County, Mississippi, has provided the Estate of Jessie Lee Williams, Jr., with an assignment of a chose in action to pursue this suit against the ACA and the Plaintiff herein now stands in its shoes. A copy of the assignment of chose in action is attached hereto and incorporated herein as Exhibit "B".  Therefore, the Plaintiff is entitled to a money judgment against the ACA whose breach of contract caused or contributed to or otherwise facilitate the wrongful death of the Deceased, Jessie Lee Williams, Jr.

44.     The Plaintiff hereby prays that after a trial by jury that it be awarded a money judgment in an amount to be set by a jury but not less than $50,00,000.00 in compensatory damages, and punitive damages, should the jury find that the breach was constituted such a gross disregard for the health, welfare and safety of others or if the jury determines that the contract was performed in bad faith or that there was actual fraud or misrepresentation committed on the part of te ACA and it representatives, employees and/or agents, in an amount of $100,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Mr. Terry Williams, the administrator of the Estate of the Deceased, Jessie Lee Williams, Jr., prays that upon the filing of this Second Amended Complaint that this Honorable Court would advance this case on the trial docket for the purpose of commencing a complete trial on the merits as soon as possible and upon the completion of the same enter a judgment granting the following relief:

a. enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for the actual or compensatory and presumed damages sustained by the Deceased, Jessie Lee Williams, Jr., and which survive his demise pursuant to 42 U.S.C. Sections 1983, 1985, 1986, 1988, the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, the corresponding provisions of the Constitution for the State of Mississippi and for the violation of numerous pendent or supplemental state claims arising out of the same set of facts from which the deprivation of civil, constitutional and human rights arose for the deprivation of such constitutional rights, wrongful death, personal injury to his body as a whole but especially his head, eyes, face, testicles, back, legs, arms, chest, internal organs and other parts of his anatomy, infliction of emotional distress, mental anguish, pain, suffering, degradation, humiliation, torture, loss of enjoyment of life, medical, funeral and/or burial expenses, loss of society and support, breach of contract and any other injury or claim that maybe discovered during the discovery process for which the law holds the Defendants liable and responsible in an amount to be determined by a jury but not less than $50,000,000.00;

b. a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for punitive or exemplary damages, for the outrageous, willful, wanton and intentional conduct that resulted in a gross or reckless disregard for the welfare, safety, rights, privileges or immunities of the deceased, Jessie Lee Williams. Jr., in an amount to be determined by the jury but not less than $100,000,000.00;

c. a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for

the Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988, all costs of this action

and related litigation expenses and expert fees;

    d. a judgment for such other relief, general or specific, as the Court may deem
appropriate, just and equitable in the premises.

Respectfully submitted, this the   4th   day of February, 2009.

> **Terry Williams, Administrator of the Estate of
> the Deceased, Jessie Lee Williams, Jr.**
>
> BY:      s/Michael W. Crosby
> MICHAEL W. CROSBY, (MS BAR# 7888) 2111 25TH
> AVENUE GULFPORT, MISSISSIPPI 39501 228.865.0513
> (phone)/228.865.0337 (fax) email address:
> michaelwcrosby@bellsouth.net